May it please the Court, Jeremy Christensen on behalf of Appellant Dennis Claiborne. I will try to reserve three minutes of time for rebuttal. The constitutional right to a fair trial is vital and fundamental, whether it is in a criminal guilt phase proceeding, a sentencing proceeding, or a civil trial. That is why this Court in Duckett v. Godinez acknowledged, consistent with the holdings of all of the other courts of appeals to address this question, that when an individual's level of dangerousness is a question before the jury in a civil proceeding, it is a violation of the right to a fair trial for that individual to be visibly shackled. That rule decides this case and decides it in Mr. Claiborne's favor. Mr. Claiborne was a pro se disabled prisoner litigant who presented a three-day case to the jury in which they had to decide whether he had posed a threat to officers Blauser and Martin that justified their use of force against him. Was he only wearing shackles on his feet, on his ankles? No, Your Honor. He was wearing waist chains. If the Court looks at page 167 of the excerpts of record, I don't think there is anything equivocal about Officer Blauser's expert testimony about what Mr. Claiborne was wearing at that moment. Defense counsel says to Officer Blauser, now, we've heard a lot about waist chains in this case, and it's sort of an odd case because the shackling issue and the merits sort of converge, and said, can you please give some context for the jury about just what are waist chains? And Officer Blauser's response is, yes, Mr. Claiborne is wearing them right now. I don't think there's anything equivocal. My friend on the other side has asserted that perhaps Officer Blauser was referring to something he was wearing outside the presence of the jury earlier. He had waist chains, which I guess were attached to his wrists. Yes, yes. And he had shackles. Did he ever object? No. He did not offer a contemporaneous objection during the trial. He raised the matter in his timely motion for a new trial. But I think it's important to look at the case. It's similar to this Court's decision in Gonzalez v. Plyler, which was the Stun Belt case, in which the Court said it is the duty of the district court to be the one who makes the affirmative decision consistent with constitutional principles that a litigant will be shackled inside of the courtroom. And so there is not any instruction, certainly from the district court to Mr. Claiborne, when the court acknowledges that he was wearing ankle shackles on the first day of trial, that what he needed to do was keep those hidden. The remainder of the interactions during the trial are not consistent with the idea that there was some sort of curative procedure put in place, like generally happens in shackling cases. Mr. Claiborne asked to approach the Elmo and the lectern to present argument and evidence on at least five occasions, by my count. And the district court, without any hesitation, permitted him to do so. And the problem here, again, is that it's undisputed, I think, in this case, that these shackles were visible to the jury on numerous occasions and that his level of dangerousness was a merits question before the jury. We don't think there's a Ninth Circuit opinion that's set forth what a district court judge should do in a civil case when a prisoner, in a situation like this, comes into the courtroom with shackles. Is there a published opinion that sort of tells a district court judge, this is what you should do? There is not a published decision in a civil 1983 case, but I don't think that that's really the pertinent question. The question is, what are the principles that underlie the shackling cases, which all of the courts of appeals have acknowledged, whether it's guilt phase sentencing or civil trials. The courts have found a common thread between these circumstances where there is severe prejudice due to visible shackling that undermines the jury's ability to fairly judge the facts, all the more so in a case in which the level of dangerousness of the litigant has been injected into the case by the defendants, which is what happened here. And in those cases, the courts are unanimous that there needs to be an individualized determination that this particular litigant poses a threat of violence, disruption, or escape. Well, the problem is, he didn't object, so it has to be plainly obvious to the district judge as to what the district court judge should do. I think, as my friends on the other side note, I believe at page 21 of the red brief, that if Mr. Claiborne was, in fact, wearing waist chains, that surely the district court would have sua sponte inquired as to whether that was necessary. The district court's own order, at page 3 of the excerpts of record, says and tells this court exactly what the court would have done had an objection been offered. The district court said, had Mr. Claiborne objected, I would have ordered him shackled, nonetheless, because he is a felon serving a lengthy sentence. So I don't think the court needs to be overly concerned about what would have happened had Mr. Claiborne objected. And the question is, was that an obvious error? And the answer is, yes. The Supreme Court in Deck v. Missouri said that that was an error for the district court to justify the shackling in that case based simply on the conviction. This Court in Ducat v. Godinez said the same thing 24 years before this trial occurred, said that a felon status, standing alone, is insufficient to justify visible shackling. I'm aware of no court that has permitted shackling in any circumstance similar to this, and at the least have certainly not pointed to any similar circumstance. Their main contention seems to be, well, many of these cases are criminal cases or sentencing cases. It would point the Court to the decisions of the Second Circuit and the Third Circuit in Davidson v. Riley and Size v. Cherry. The defendants in those 1983 civil cases raised this exact argument, that criminal cases don't apply. And the Second and Third Circuits both said, we're looking at the law of our sister circuits, including this circuit, citing Tyers v. Finner, and said the concerns that the Supreme Court has identified that flow from visible shackling apply equally in civil cases. And at the least have not offered any substantive reason why this rule would not apply, why for some reason, once we shift over into a criminal proceeding, all of the sudden the jury is not going to be deeply prejudiced by viewing the litigant in shackles. And so we submit it is obvious that this right applies. This Court identified in Ducat that the rule we are contending for was the rule in civil cases 20-some years before this trial occurred. And even in Carpenter, the Court's unpublished decision, the Court said, well, the shackles here weren't visible, there's no plain error, but admonished the courts in the footnote in that opinion that they needed to be aware of the problem. And it is a very significant problem, as Judge Posner sort of colorfully put it in Mouse v. Baker, that when the jury sees somebody in shackles, they think they're dealing with a mad dog. And the Supreme Court has acknowledged this concern that is a common-sense inference for the jury to conclude that the individual is dangerous and a threat. That's exactly what the Seventh Circuit also concluded in Lemons v. Skidmore, which is a case very similar to this one. Roberts. And didn't Ducat, didn't this Court in Ducat cite Lemons v. Skidmore and expressly note that it was a 1983 case? Yes. The Court in Ducat cites, if I'm not mistaken, Tyers v. Finner, a civil commitment case, Lemons v. Skidmore, a 1983 case, and Holloway v. Alexander from the Eighth Circuit, which is also a 1983 case in which the Court said there was no error there because the individual, the plaintiff there was extremely dangerous, and his own testimony established that and established his liability, or that he was likely to try and escape, that both of those things were present on the record. And there was also an instruction in Holloway specifically about the shackles, a jury instruction telling the jury to disregard the shackling. Now, what appellees offer to try and say that there's not any prejudice here, they offer a couple of arguments. One of them is to point to the other discussions and instructions, that's at S.E.R. 2-3, 7-8, and 9-16, and none of those say a word about shackling. They talk about being fair to pro se litigants. They talk about being fair to prisoner witnesses, not even Mr. Claiborne specifically, but just prisoner witnesses vis-a-vis corrections officers, because there were multiple prisoner witnesses in the case. And the last set of instructions are sort of the generic, be fair and do your job, and base your decision on the evidence. And if those sorts of instructions were sufficient to cure this kind of prejudice, I can't imagine what case there would ever be prejudice in. I would imagine such instructions were given in many, if not most, prisoner 1983 cases, instructing the jury to simply be fair. But that has nothing to do with shackling. I believe don't cite a single case in which a court has found a jury instruction or a voir dire instruction that is not about shackling as curing prejudice. I'm not aware of any. The Seventh Circuit in Mouse v. Baker has said that the Seventh Circuit doesn't even think a jury instruction could cure the prejudice. And so there's really nothing on the record to say that he did not suffer the kind of prejudice that all the courts have acknowledged flow from visible shackling. And that would dispose of the case, whether the court looks at it from an abusive discretion point of view or plain error, that his substantial rights were affected. It's not that dissimilar from Davidson v. Riley in the Second Circuit's decision, which didn't even involve dangerousness. It's a prisoner male case. And the court there said, look, this is sort of a he said, she said sort of situation. There's some evidence going both ways. It went to the jury. That's sufficient. And he heard that that was certainly the case. There's conflicting testimony. Officer Blauser's description of certainly the first encounter with Mr. Claiborne is diametrically opposed to Mr. Claiborne and inmate Bullock's testimony about what happened. And their description of what happened in the prison yard as well is completely different. And the Rule 50 motion for judgment was denied in the case. And so I think clearly this affected Mr. Claiborne's substantial rights. If there are no further questions, I'll reserve the remainder of my time for rebuttal. Thank you, counsel. We'll hear from the government. May it please the Court. I'm Deputy Attorney General Jamie Ganson. Could you move the mic down just a little bit? There you go. Thank you. Thank you, Your Honor. I represent Defendant Correctional Officers Martin and Blauser in this action. Mr. Claiborne brought suit concerning a use of force during a prison escort. And in his opening statement at trial, Mr. Claiborne chose to immediately draw the jury's attention to his shackles, stating, as you can see, I'm in shackles. I'm in prison. He then proceeded to discuss his felony convictions. In this case, the shackles informed the jury only of information already apparent from Mr. Claiborne's claim, that he was an inmate and nothing more. Mr. Claiborne confirmed as much in his opening statement, and the jury was never led to believe otherwise. The shackles... Why don't you think that the presence of shackles indicates to the jury that he's potentially dangerous? In this case, he's expressly informed the jury that the shackles were a result solely of his incarceration. The other fact... Are you saying that all prisoners who appear in court in civil cases are shackled? Your Honor, I have no knowledge as to what happens in all cases. Well, that seems to be the premise of your argument, because you're saying that the only thing that the shackles indicated was that he was a prisoner, and that necessarily implies that all prisoners appearing in court are shackled, and that there would be no other reason why somebody would be shackled other than that they are a prisoner. No, Your Honor. What I'm saying is that in this particular case, with the instruction that Mr. Claiborne gave to the jury, the explanation that he told the jury expressed that that was the reason for his shackling, and the jury was never told anything else. An additional factor... Maybe he was just trying to eliminate the bite of having been shackled. So he's saying to the jury, look, I have these shackles. It's not because I'm this wild dog who will lunge at you and therefore make it more believable that he would have lunged at the two guards bringing him across the yard. Rather, the only reason I'm in shackles is because I'm a prisoner, so don't draw any adverse inferences from it. So I have two responses, Your Honor. First of all, Mr. Claiborne never objected to the shackling in the district court. He certainly had every right to... That's not a response to my question. What's important to note here that distinguishes this case is that Mr. Claiborne himself brought the shackles to the jury's attention, to the forefront of the jury's attention at the start of the case. Did he ask to be shackled? It's not on the record, Your Honor. However... Of course he didn't ask to be shackled. The Court also... Let me ask you this. Just in terms of shackling law, would you agree that the justification for a shackle that is based solely on the prisoner's felony status is improper? Your Honor, I would say that it would take an individual analysis depending on what the circumstances of that felony conviction were. So you would agree that he was not convicted of any violent crimes, true? I do not know that, Your Honor. No, he was sentenced based on three strikes for property violations. As far as his testimony regarding his reasons for incarceration, that is correct, Your Honor. Oh, we know. I do not know anything further.  Your Honor, we are operating on an incomplete record because the law of this circuit... Go ahead. ...does not require the district court to hold a hearing or to place any statement of the reasons for shackling on the record. And because of that, when no objection was made here, the court did not have an opportunity at trial to fully address the issue. Additionally... But the court did address the issue on the motion for a new trial. And that was the only reason given. The motion for a new trial contained one or two sentences concerning shackling, so there wasn't a lot for the court to go on. Usually, in my experience, when they're in the courtroom, they have the court does take input from concerning the inmate's sentence, concerning the officers that are there that can tell them what security risks are in the courtroom. Well, there was no security risk from this petitioner. Well, it's not clear from the record here because... Well, I mean, assuming from the record that he didn't have any history of a violent crime... He did have a... The case was about his violent outburst when he didn't get his way. So although double-edged sword, there is some evidence that there are security concerns. And there was no risk of escape. He was disabled. He was not going to make his way past... I mean, that's what the case is about. He had to walk with a cane. There was no functional way that he could get out of the Matsui courtroom, go down the elevator, get out of security onto P Street. I certainly think that it's an unfair qualification to state that someone, because of a disability, certainly doesn't have the capability to cause a security risk in a courtroom or have the ability to escape. But there's no finding on the record about that, is there? There's no finding on the record because Mr. Claiborne never objected. And this case differs significantly from the law cited... Well, he did object afterwards. And the district judge told us exactly why he would have shackled Mr. Claiborne had it been raised. Should we disbelieve the district judge when he said, I would have shackled you for X reason? No, Your Honor. I don't believe that you should disbelieve the district judge. However, I think there's more to this case. So we take the district judge at his or her word that the only reason for the I don't think the court said that was the only reason. It just stated one reason. Did it state a second reason? Not that I'm aware of, Your Honor. There a page limit on the judge's written opinion? Well, the inmate didn't raise much in his objection there. But even so, this Court, under plenary review, and Carpenter v. Feil recognizes, has never set a precedent for what a district court must do at And because of that, the error here wasn't plain. In addition, the case here, the court took many accommodations from Mr. Claiborne to minimize any exposure of his shackling. And almost every case that's addressed this issue out of circuit that the plaintiff's counsel has cited has looked to this factor. Was he wearing waist chains? It's unclear from the record. As Mr. Claiborne's counsel cited, there was a statement by Officer Blouser concerning the waist chains. There's no evidence they were actually secured to his hands. And in fact, Mr. Claiborne himself, when challenging shackling in the district court in his two sentences post-trial motion, only mentioned the leg shackles. We can infer that he had the waist chain on, right? At least at that moment when the witness was testifying, he had to have the waist chain on, right? By waist chain on, it could have just been secured around his waist. Oftentimes, the hands will be released. So it's really unclear from the record, again, because no objection was made. But here the Court did make many accommodations. Well, except that the district court only referred to ankle shackling. So that must have been an error. But regardless of whether inmate Claiborne was in fact shackled at trial, there were still multiple accommodations given him to shield the shackles from the jury's view, including remaining seated when presenting his case, addressing the judge, displaying exhibits to the jury and the witnesses. And the jury's – Curt's instructions to the jury were very clear. Although they didn't expressly discuss shackling, what they did tell the jury was that you have to base your decision in this case solely on the evidence. And they defined evidence to say sworn testimony, exhibits and stipulations. Did she ever tell him at any time – did she ever tell the jurors at any time during the trial, the defendant is wearing shackles and you should disregard that? You should not pay any – that should not affect your verdict in any way. You should – But the jury – but the Court – Did she ever say anything like that? Yes, Your Honor. What the Court did say was that Mr. Claiborne's actions in the courtroom when making legal arguments, questioning witnesses and acting as counsel, which is in the context that they would have seen the shackles – Well, that's referred to him as a pro se, but did she ever specifically say, acknowledge the shackles and say, disregard them? The shackles were not specifically acknowledged, but at the same time, the Court told them that the plaintiff's actions in the courtroom were not evidence and that they were only to consider the evidence in the case. You – you alluded a minute ago that part of his claim, his excessive force claim, was about dangerousness. Is that right? Not per se dangerous in general, but that plaintiff had created a security concern when he made an outburst. Yes, Your Honor. So – However, under the plain error review – Why – why didn't the shackling prejudice the jury's view of that claim? I think there's multiple reasons for that. And one of the factors is, if you look at the evidence as a whole, which is what is appropriate under the plain error review, and also the abuse of discretion standard looks to the preponderance of the evidence. And here, again, it was Mr. Claiborne's own actions that made his shackling known, and he had to prove a preponderance of the evidence to prevail on his excessive force claim, that there was an intentional use of more force than was necessary. And the overwhelming testimony here, including Mr. Claiborne's own testimony, did not establish that. In fact, the testimony from both sides was that Ms. Blouser initiated contact with Mr. Claiborne at the directive of another officer. The escort proceeded all the way across the yard and to right in front of the supervisor's office until any force was used at all. An uncontested witness testimony, as well as Mr. Claiborne's own admissions, was that Officer Blouser did nothing wrong. She contended she just needed to be trained on how to do an ADA escort. At trial, he was expressly asked whether the defendant's mean-spiritedly caused him harm, and responded yes and no. He conceded multiple times that he had stated it was an excessive force in the video interview following the incident, and later expressly denied making any false statement during that interview. The video itself showed only minor injuries, scraped knee and abrasion on the cheek that was barely visible. And it contained Mr. Claiborne's testimony repeated that he did not know the force to be excessive. At trial, he continued to repeatedly undermine any implication of wrongdoing. He said that he viewed Officer Blouser as a daughter, and that the defendants were both reasonably decent people. Twice, he testified that Ms. Blouser may have thought he was pulling away from the escort. And when it came to Officer Martin, he stated that Officer Martin said he would support him during the escort, was as helpful as he could be, and described him as a good man. And testified that even after the incident, he continued to wave to Officer Martin on the yard. So here we have a situation where Mr. Claiborne did not object at trial, subjecting this case to plain error review. Carpenter v. Files. Let me just ask you about that. So as Judge Feinemann noted, in the district court's ruling on the motion for a new trial, she said she would have required shackles in any event. Had he objected? We know that if we take her for her word, that she just would have disregarded the objection. Not necessarily disregarded, Your Honor. Well, she would have overruled it. It appears she saw a possible escape risk and other issues from that response. There's no evidence of that on the record. And, you know, the State's case was that he'd had multiple knee surgeries and everyone conceded he had disabilities. I mean, the whole point of the State's evidence, in large part, was to show that he was severely injured by other means. So when you say he had the possibility of the reasonable possibility of escape in a courtroom given his disabilities and the structure of the courtroom, the security of the courtroom, the security of the courthouse, and the lack of a finding of a probability of escape or possibility of escape by the district judge, I just don't understand your response. What I'm saying, Your Honor, is that the record is not clear here. And the reason it's not clear is because no objection was made. In Carpenter v. Fyle, this Court recognized that. Well, I guess my question was, you know, why shouldn't we overlook that given what the judge said? Overlook plain error review, Your Honor? Overlook the fact that he didn't object. He's a pro se, and then we know what the judge, how the judge viewed the issue when she ruled on the motion for a new trial. The plaintiff in Carpenter was also. I wouldn't have shackled him anyway. He's a long-term prisoner. The plaintiff in Carpenter was also pro se and failed to make an objection. And there, this Court also. Was there a motion for a new trial like this, a post-trial order ruling by the district court judge? I'm not sure whether there was, Your Honor. But even if we were to look at this under the lesser abuse of discretion standard, the cases dealing with shackling, especially those at civil trials, no case holds shackling to be per se unconstitutional. And instead, they look at what effect it had at trial. And here, it was clear that the district court took multiple steps to shield the jury's view of the shackles. But it was Mr. Claiborne himself that brought them to the jury's attention, that declined to use the accommodations made available, that chose to walk back and forth across the courtroom, as his counsel said five different times, putting the shackles in full view. This isn't an error by the Court that put the issue of shackling in the forefront of the jury's attention. It was Mr. Claiborne's use of that shackling to try to garner support from the jury and use those to show, look, it's because I'm a convicted felon. Here, the weight of the evidence presented at trial shows that there was no clear error, no clear abuse of discretion that affected the outcome of the trial. Roberts. So are you suggesting that he used the shackles to evoke sympathy from the jury? I believe he did so in his opening statement. He got up. He discussed the shackling directly. He used them as a segue to discuss his sentencing. He even talked about how prison had saved him from going down the rabbit hole. So he really used them to segue into, I'm a prisoner. I'm here. This is how it is. But consider my claim. All right. Mr. Claiborne waived any challenge when he failed to object to the shackling at trial. And under any standard of review, he has not established reversible error on appeal. Defendant Correctional Officers Martin and Blouser therefore ask that this court affirm the jury's verdict. Thank you, Your Honors. Thank you, counsel. Thank you, Your Honors. Just a couple of points on rebuttal. As to Mr. Claiborne's statement, his opening statement to the jury at which he was seated at counsel table, he says, as you can see, I am in shackles. I think it was apparent to everyone in the room, even while he was seated, that he was in shackles. The district court's — the district court did not set up any kind of procedure in order to keep the shackles hidden. And you can also discern that from the district court's order. If that were the case, if the district court had said, now, Mr. Claiborne, shackles are very prejudicial, we're going to have you present your case entirely from counsel table, one would imagine that the district court's order denying Mr. Claiborne's motion for a new trial would have said so. It does not. What the district court's order says is exactly what was alluded to earlier, that she would have denied his motion in all events because he was a felon serving a lengthy sentence. Every court to have considered that argument has rejected it. Counsel offered the argument, well, they already knew he was a prisoner. That exact argument is raised in Lemons v. Skidmore and rejected on the nose by the district court in the Seventh Circuit. There is simply no plausible case that Mr. Claiborne did not suffer prejudice from this. That seems to be the main contention now, as it is conceded that the shackles were visible, which is a concession that the order under review before this Court contains a clearly erroneous finding of fact. The district court judge says it is unlikely the jury ever saw them. And my friend on the other side concedes that was clearly erroneous, that the district court simply offered up a justification that every court has rejected in justifying the shackling. He's a felon serving a lengthy sentence. That will be true of every prisoner litigant who survives the screening of his complaint, who survives dispositive motions and discovery and summary judgment and gets before a jury. And again, appellees don't deny that whatever the merits of the case, and I would just refer the court to our description of Mr. Claiborne's evidence and testimony as to his side of that story. But the they filed a motion for judgment as a matter of law, and the district court denied the motion for judgment as a matter of law. This case went to the jury, and it was deeply prejudicial to my client. And violated his constitutional right to a fair trial. And that was either an abuse of discretion or plain error. Either way, the court looks at it. Thank you. Thank you, counsel. Thank you for your pro bono representation. Thank you both for your arguments this morning. The case just argued will be submitted for decision. And the next case on the oral argument calendar is Crawford v. City of Bakersfield.
judges: Thomas, Paez, Feinerman